******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

JOSEPH HALLADAY *v.* COMMISSIONER
OF CORRECTION
(SC 20369)

Robinson, C. J., and McDonald, D'Auria, Kahn and Ecker, Js.

*Syllabus*

Pursuant to this court's decision in *State* v. *Curcio* (191 Conn. 27), certain
interlocutory orders and rulings of a trial or habeas court may be appeal-
able when the order or ruling terminates a separate and distinct proceed-
ing or when the order or ruling so concludes the rights of the parties
that further proceedings cannot affect them.

The petitioner, who had been convicted, on a guilty plea, of murder and
tampering with physical evidence, sought a writ of habeas corpus, claim-
ing that his plea agreement was the result of the ineffective assistance
of trial counsel. The respondent, the Commissioner of Correction, subse-
quently filed a motion for the production of relevant materials from
the petitioner's underlying criminal defense and investigative files. The
habeas court rejected the petitioner's claim that those materials were
protected by the attorney-client privilege, granted the respondent's
motion, and ordered the petitioner to produce from the criminal defense
file copies of any materials related to his ineffective assistance claim, as
well as a privilege log identifying any undisclosed materials the petitioner
contended were unrelated to that claim. The habeas court denied the
petitioner's petition for certification to appeal, and the petitioner
appealed to the Appellate Court, which granted the respondent's motion
to dismiss the appeal for lack of a final judgment. On the granting of
certification, the petitioner appealed to this court, claiming that the
Appellate Court improperly dismissed his appeal for lack of a final
judgment and claiming, alternatively, that this court should reach the
merits of his privilege claims pursuant to the statute (§ 52-265a) allowing
direct appeals from interlocutory orders in matters involving a substan-
tial public interest. *Held*:

1. The Appellate Court properly dismissed the petitioner's appeal for lack
of subject matter jurisdiction, as the habeas court's discovery order
was not an appealable final judgment under either prong of *Curcio*: an
interlocutory discovery order terminates a separate or distinct proceed-
ing under the first prong of *Curcio* only if the lower court has issued
a clear and unequivocal order that is sufficiently definite, specific, and
comprehensive concerning a discovery request served on a nonparty
for information that is not required to resolve the underlying issue in
the case, and, because the petitioner was a party to the habeas proceed-
ings, the discovery order did not terminate a separate and distinct pro-
ceeding concerning his property interest in his criminal defense file;
moreover, the second prong of *Curcio* was not satisfied because the
right that the petitioner sought to vindicate, namely, the right to confiden-
tiality in his criminal defense file, could still be affected by further
proceedings insofar as the habeas court would conduct, in response to
the privilege log that it ordered the petitioner to produce, an in camera
review of the petitioner's individual claims of privilege as to specific
items within the file.

2. This court declined the petitioner's request to reach the merits of his
privilege claims by treating his appeal as a direct appeal from an interloc-
utory order on certification by the Chief Justice pursuant to § 52-265a,
as the present case did not present a matter of substantial public interest
or urgency.

Argued February 17—officially released August 5, 2021*

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
New Haven, where the court, *Hon. Jon C. Blue*, judge
trial referee, granted the respondent's motion for pro-

duction and ordered the petitioner to produce certain materials; thereafter, the court, *Hon. Jon C. Blue*, judge trial referee, denied the petitioner's petition for certification to appeal, and the petitioner appealed to the Appellate Court, which granted the respondent's motion to dismiss the appeal, and the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Kathryn W. Bare*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Adrienne Russo*, assistant state's attorney, for the appellee (respondent).

*Christine Perra Rapillo*, chief public defender, *Emily H. Wagner*, assistant public defender, and *Jennifer Bourn*, supervisory assistant public defender, filed a brief for the Office of the Chief Public Defender as amicus curiae.

*Opinion*

ROBINSON, C. J. The principal issue in this certified appeal is whether a discovery order issued by a habeas court that implicates the attorney-client privilege between a petitioner and the attorneys who represented him during the underlying criminal proceedings is an appealable final judgment under *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). The petitioner, Joseph Halladay, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court, which dismissed his appeal from the order of the habeas court directing the petitioner to produce certain investigative materials contained in the file of his criminal defense attorneys. On appeal, the petitioner claims that (1) the Appellate Court improperly dismissed his appeal for lack of subject matter jurisdiction, and (2) the habeas court improperly granted the motion for production filed by the respondent, the Commissioner of Correction, over his claims of privilege. Because the habeas court's order does not constitute an appealable final judgment, we cannot review whether the habeas court properly rejected the petitioner's claim that his attorneys' case file was privileged. Accordingly, we affirm the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. On February 9, 2011, pursuant to a plea agreement, the petitioner pleaded guilty to the crimes of murder in violation of General Statutes § 53a-54a (a) and tampering with physical evidence in violation of General Statutes § 53a-155 (a) (1). The plea agreement provided that the petitioner would receive a sentence in a range of twenty-seven to forty years' imprisonment; the trial court sentenced him to forty years' imprisonment. Subsequently, on May 25, 2018, the petitioner filed a revised amended petition for a writ of habeas corpus, claiming, inter alia, that the plea agreement was the result of the ineffective assistance of the public defenders who had been assigned to represent him in the underlying criminal proceedings. Specifically, the petitioner alleged that the assistance of counsel was ineffective because of their failure, among other things, to perform adequate factual investigation and legal research, to adequately impeach or cross-examine certain witnesses, to investigate and present evidence on specific matters, to consult or present the testimony of various experts and professionals, to present the petitioner's testimony, to adequately prepare a defense, to present mitigating evidence during sentencing, and to preserve the petitioner's appellate rights, as well as numerous other failures regarding the plea negotiations.

The respondent subsequently filed a motion for the production of relevant materials from the petitioner's underlying criminal defense and investigative files.[2] The habeas court heard the respondent's motion on Febru-

ary 22, 2019. In its order granting the respondent's motion, the habeas court stated: "Given the breadth and generality of the allegations made in the revised amended petition . . . it seems unlikely that any investigative materials in . . . trial counsel's files are unrelated to those allegations, but, in the absence of an in camera inspection of the files in question, this issue cannot be definitively determined by the court. In the event that the petitioner contends that certain materials in the files in question are unrelated to his claims, he is ordered to create a privilege log identifying those materials. . . .

"The motion for production is granted. The petitioner is ordered to produce copies of any materials contained within his underlying criminal defense investigative files that relate to his claim that criminal defense counsel rendered ineffective assistance . . . in connection with their representation. The petitioner is additionally ordered to produce a privilege log of undisclosed materials.

"Compliance is ordered by March 15, 2019. It is understood that, if the petitioner chooses to file an amended habeas petition narrowing his claims, the scope of materials deemed relevant to such amended claims may also be narrowed." (Citation omitted.)

On March 15, 2019, the petitioner filed both a motion for reconsideration with the habeas court and an appeal from the habeas court's discovery order with the Appellate Court.[3] The habeas court denied the motion for reconsideration, and the Appellate Court subsequently granted the respondent's motion to dismiss the appeal for lack of a final judgment. This certified appeal followed. See footnote 1 of this opinion.

On appeal, the petitioner claims that (1) the Appellate Court improperly dismissed the petitioner's appeal for lack of a final judgment, and (2) we should reach the merits of his claims and conclude that the habeas court's order would have violated his attorney-client privilege, as waiver does not commence until trial begins. We address each claim in turn.

I

The petitioner claims, inter alia, that the habeas court's discovery order constituted an appealable final judgment under *State* v. *Curcio*, supra, 191 Conn. 31, because it (1) terminated a separate and distinct proceeding regarding his property interests in the case file, and (2) concluded the petitioner's right to maintain the confidentiality of the case file so that no further proceedings could affect that right.

We begin by setting forth the applicable standard of review. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [and, therefore] our

review [as to whether the Appellate Court had jurisdiction] is plenary." (Internal quotation marks omitted.) *Rockstone Capital, LLC* v. *Sanzo*, 332 Conn. 306, 312–13, 210 A.3d 554 (2019).

"Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." *State* v. *Curcio*, supra, 191 Conn. 30. Under General Statutes §§ 52-263 and 51-197a, the "statutory right to appeal is limited to appeals by aggrieved parties from final judgments." Id. "In both criminal and civil cases, however, we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) [when] the order or action terminates a separate and distinct proceeding, or (2) [when] the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. We address each *Curcio* prong in turn.

A

We begin with the petitioner's claim that the habeas court's order effectively terminated a separate and distinct legal proceeding for purposes of the first prong of *Curcio* because the discovery dispute resolved a property interest in his case file, which was separate from the merits of the habeas petition. The petitioner relies on *Abreu* v. *Leone*, 291 Conn. 332, 340–41, 968 A.2d 385 (2009), and *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 755–56, 48 A.3d 16 (2012), two cases in which this court held discovery orders to be final judgments. In response, the respondent relies on *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 207 A.3d 493 (2019), and argues that the discovery order is not a separate and distinct proceeding under *Curcio* but, rather, a mere step along the road to the final judgment in the habeas proceeding to which the petitioner is a party, thus distinguishing this case from the authorities relied on by the petitioner. We agree with the respondent and conclude that the discovery order did not terminate a separate and distinct legal proceeding.

In *Abreu*, the intervening plaintiff, the Department of Children and Families (department), appealed from the order of the trial court compelling it to disclose information that would violate General Statutes § 17a-28 (b), which prohibits the disclosure of records maintained by the department. See *Abreu* v. *Leone*, supra, 291 Conn. 334–35. In determining that the challenged order was an appealable final judgment, we focused on the fact that the department was not a party to the underlying action and, thus, lacked the statutory right to appeal from the conclusion of that proceeding. See id., 349–50. We also emphasized that the trial court

order at issue was unequivocal in its directives and that there were no further proceedings concerning the matter between the plaintiff and the defendant that involved the department. See id., 345–47.

Subsequently, in *Woodbury Knoll, LLC*, a nonparty law firm brought a writ of error from the trial court's order to produce materials that it claimed were protected by attorney-client privilege and the attorney work product doctrine. See *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 752. In determining whether there was subject matter jurisdiction, this court identified three guiding principles emerging through its final judgment jurisprudence: (1) "the court's focus in determining whether there is a final judgment [under the first prong of *Curcio*] is on the order immediately appealed, not [on] the underlying action that prompted the discovery dispute"; (2) "determining whether an otherwise nonappealable discovery order may be appealed is a fact specific inquiry, and the court should treat each appeal accordingly"; and (3) "although the appellate final judgment rule is based partly on the policy against piecemeal appeals and the conservation of judicial resources . . . there [may be] a counterbalancing factor that militates against requiring a party to be held in contempt in order to bring an appeal from a discovery order."[4] (Emphasis omitted; internal quotation marks omitted.) Id., 760–61. In applying these principles and holding that there was an appealable final judgment in *Woodbury Knoll, LLC*, we expressly articulated an exception to our final judgment jurisprudence for nonparties to the underlying matter.[5] See id., 769.

Our recent decision in *Redding Life Care, LLC* v. *Redding*, supra, 331 Conn. 711, articulates the status of the *Woodbury Knoll, LLC* nonparty exception, as narrowed by other cases: "[A]n interlocutory discovery order [terminates a separate or distinct proceeding] under the first prong of *Curcio* only if the trial court has issued a clear and unequivocal order that is sufficiently definite, specific, and comprehensive concerning a discovery request served on a *nonparty* for information that is not required to resolve the underlying issue."[6] (Emphasis added.) Id., 736; see also *McConnell* v. *McConnell*, 316 Conn. 504, 512–13, 113 A.3d 64 (2015); *Niro* v. *Niro*, 314 Conn. 62, 72–73, 100 A.3d 801 (2014). Because the petitioner is indeed a party to the habeas proceedings, we conclude that the discovery order did not terminate a separate and distinct proceeding and, accordingly, is not an appealable final judgment under the first prong of *Curcio*.[7]

### B

An interlocutory order is appealable under the second prong of *Curcio* "[when] the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn.

31. The petitioner contends that the second prong of *Curcio* is satisfied because the discovery order threatens the preservation of his right to confidentiality in his defense counsel's case file. The petitioner claims that the right was established in two ways, namely, (1) by the habeas court's decision entitling him to withdraw any claims prior to disclosing the file, and (2) by the Superior Court's decision in *Breton* v. *Commissioner of Correction*, 49 Conn. Supp. 592, 600–602, 899 A.2d 747 (2006), which provides that, when a party places the contents of an attorney's advice at issue by filing a habeas petition claiming ineffective assistance of counsel, that party impliedly waives the attorney-client privilege but can reassert that privilege by withdrawing the applicable portions of the habeas petition. In response, the respondent contends that the discovery order did not conclude the rights of the parties because there very well could have been future proceedings following the receipt of the ordered privilege log. See, e.g., *State* v. *Jamar D.*, 300 Conn. 764, 773, 18 A.3d 582 (2011) (defendant's transfer from youthful offender docket was not appealable final judgment under *Curcio* because it was still subject to future proceeding and not yet finalized). We conclude that there was no final judgment under the second prong of *Curcio*.

"The second prong of the *Curcio* test, on which the [petitioner] relies in the present case, permits an appeal if the decision so concludes the rights of the parties that further proceedings cannot affect them. . . . That prong focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. . . . In other words, the [appellant] must do more than show that the trial court's decision threatens him with irreparable harm. The [appellant] must show that that decision threatens to abrogate a right that he or she *then* holds. . . . The right itself must exist independently of the order from which the appeal is taken." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 745–46, 150 A.3d 1109 (2016); accord *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 226–27, 901 A.2d 1164 (2006).

The key to appellate jurisdiction under the second prong of *Curcio* is not so much that the right is already secured to a party; indeed, what is at issue in an appeal is the effect of the challenged order on the scope of the claimed right at issue. Rather, the second prong of *Curcio* boils down to whether, as a practical and policy matter, not allowing an immediate appeal will create irreparable harm insofar as allowing the litigation to

proceed before the trial court will—in and of itself—function to deprive a party of that right. See, e.g., *Blakely* v. *Danbury Hospital*, supra, 323 Conn. 746 ("[t]he rationale for immediate appellate review is that the essence of the protection of immunity from suit is an entitlement not to stand trial or face the other burdens of litigation" (internal quotation marks omitted)); *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 231 ("even when an order impinges on an existing right, if that right is subject to vindication after trial, the order is not appealable under the second prong of *Curcio*"). Paradigmatic examples of such rights that require immediate vindication via an interlocutory appeal are double jeopardy violations resulting in successive prosecutions; see, e.g., *State* v. *Crawford*, 257 Conn. 769, 777, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002); collateral estoppel and res judicata; see, e.g., *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 328 n.3, 15 A.3d 601 (2011); and various immunities from suit. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 787, 865 A.2d 1163 (2005) (absolute immunity for statements made in judicial and quasi-judicial proceedings); *Shay* v. *Rossi*, 253 Conn. 134, 166, 749 A.2d 1147 (2000) (colorable claim to state's sovereign immunity is appealable final judgment because that "doctrine protects against suit as well as liability—in effect, against having to litigate at all"), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 828 A.2d 549 (2003); see also *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 233–34 (denial of motion for prepleading security by unauthorized insurer pursuant to General Statutes § 38a-27 (a) is appealable under second prong of *Curcio* because, "once the trial has concluded, the court will be unable to restore to the plaintiffs either their right to have the defendants post security or their right to obtain a default judgment against the defendants"); cf. *Blakely* v. *Danbury Hospital*, supra, 751–52 (This court held that the defendant's interlocutory appeal challenging the trial court's decision that a savings statute permitted the plaintiff's wrongful death action was not a final judgment under the second prong of *Curcio*, even when the limitations period was jurisdictional in nature, because "jurisdictional prerequisites to suit are [not] intended to confer immunity from suit. If that were the case, an interlocutory appeal would be permitted every time a party challenged the satisfaction of any of the numerous justiciability matters that we have deemed to be jurisdictional in nature (standing, mootness, ripeness, political question doctrine) . . . or any condition precedent to suit in a statutorily created cause of action that similarly has been deemed jurisdictional," meaning that "appellate courts would be inundated with interlocutory appeals, in contravention of our intention that the *Curcio* exceptions to the final judgment rule be nar-

row." (Citation omitted; internal quotation marks omitted.)).

The issue presented in the present case falls squarely into the realm of discovery orders in pending cases that are not subject to interlocutory appeals under the second prong of *Curcio*, even when they concern the disclosure of materials that are potentially subject to the attorney-client privilege or other protections. The leading case on this point is *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 520 A.2d 605 (1987), in which this court concluded that the trial court's order to an insurance company to disclose its claims file was not an appealable final judgment, despite the insurance company's assertion of the attorney-client privilege and attorney work product doctrine. See id., 253, 259. The court rejected the insurer's argument that "the privacy interests protected by the attorney-client privilege cannot be completely restored once they have been invaded by a disclosure order," observing that, although "a remand for a new trial resulting from an erroneous order to disclose information protected by the privilege cannot wholly undo the consequences of its violation . . . the rights of the client in respect to use of privileged material during further proceedings in the litigation can be adequately safeguarded." Id., 257. The court further observed that its "concern for the efficient operation of the judicial system, which is the practical consideration behind the policy against piecemeal litigation inherent in the final judgment rule . . . has induced [it] to dismiss appeals [when] statutorily created rights of privacy, no less significant than the right of confidentiality for attorney-client communications, have been at stake." Id., 258. Thus, the court determined that "the occasional violation of the attorney-client privilege . . . is a lesser evil than that posed by the delay in the progress of cases in the trial court likely to result from interlocutory appeals of disclosure orders." Id., 259; see *State* v. *Fielding*, 296 Conn. 26, 39–40, 994 A.2d 96 (2010) (order directing state to duplicate and provide to defense counsel materials seized in connection with defendant's child pornography arrest was not appealable by state under second prong of *Curcio*, despite claim that, "once the materials at issue . . . are disclosed, the proverbial horse is out of the barn"); *Massachusetts Mutual Life Ins. Co.* v. *Blumenthal*, 281 Conn. 805, 807–809, 815, 917 A.2d 951 (2007) (denial of application for temporary injunction to enforce confidentiality protection for internal investigative reports provided to attorney general pursuant to General Statutes (Rev. to 2007) § 35-42 was not appealable under second prong of *Curcio*).

Applying these principles to the present case, we observe that the petitioner's claimed right to maintain the confidentiality of the case file is one that is not akin to that narrow set of rights that require immediate appellate vindication by interlocutory appeal to avert

their loss. This is particularly so given that the petitioner filed his appeal prior to producing a privilege log to the habeas court, which means that the appeal preceded any resolution by the habeas court in camera of individual claims of privilege as to specific items. The habeas court's rulings on these individualized determinations might well have been to the petitioner's satisfaction, obviating any perceived need for an interlocutory appeal. Put differently, the timing of this interlocutory appeal renders it a potentially piecemeal appeal even as to the privilege issue, let alone the habeas action as a whole.[8] Accordingly, we conclude that it is not appealable under the second prong of *Curcio*.

Because the discovery order at issue does not satisfy either prong of *Curcio*, we conclude that it is not an appealable final judgment. Accordingly, the Appellate Court properly dismissed the petitioner's appeal for lack of subject matter jurisdiction.

## II

Notwithstanding our conclusion that we lack subject matter jurisdiction over this appeal, the petitioner nevertheless asks us to reach the merits of his privilege claims. The petitioner argues in his reply brief that the Chief Justice should certify this issue for an expedited appeal as a question of great public importance pursuant to General Statutes § 52-265a.[9]

On the rare occasion, this court has treated a case certified for appeal from a judgment of the Appellate Court as a late petition to the Chief Justice under § 52-265a,[10] which does not require a final judgment for appellate jurisdiction. See, e.g., *State* v. *Komisarjevsky*, 302 Conn. 162, 164–65, 25 A.3d 613 (2011) (raising issue sua sponte); see also *Kelsey* v. *Commissioner of Correction*, 329 Conn. 711, 713 n.1, 189 A.3d 578 (2018) ("[t]his court has construed § 52-265a to allow the Chief Justice to certify an appeal in matters of public importance even if the order challenged is not a final judgment"). As we pointed out in *Komisarjevsky*, however, this remedy is highly unusual. See *State* v. *Komisarjevsky*, supra, 165–66 n.3. The Chief Justice granted the request for § 52-265a relief in that case because it presented urgent matters concerning a death penalty trial arising from the defendant's connection with a triple murder, sexual assault, and arson. See id., 166–67 and n.3. In *Komisarjevsky*, the defendant appealed from the trial court's granting of a motion to vacate the sealing order filed by the intervenors, who were members of the media, claiming that the vacating of that order would violate his right to a fair trial. See id., 164–66. The Appellate Court dismissed the appeal for lack of a final judgment, and this court granted certification to consider that issue. See id., 172. By the time the appeal was argued before this court, the start of evidence was scheduled for a date less than three months away. See id., 166 n.3. Given the urgent nature of the matter, this

court chose "the most expeditious route properly available . . . to avoid potentially irreparable harm" and elected to treat the appeal as a late § 52-265a petition, which it then referred to the Chief Justice for certification. See id., 165, 165–66 n.3. Because the present case does not present a matter of similar public interest or urgency, we decline to exercise our authority to treat the petitioner's appeal as a late petition for certification to appeal under § 52-265a for consideration by the Chief Justice. See *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 301 n.17, 695 A.2d 1051 (1997) (whether to treat appeal as late § 52-265a petition, "despite [the appellant's] failure to follow the procedures of § 52-265a," depends "in large part . . . [on] the importance of the issues in the case"); see also *State* v. *Fielding*, supra, 296 Conn. 35 n.7 (declining to treat jurisdictionally defective appeal as § 52-265a petition given Chief Justice's determination that appeal from order requiring state to duplicate and provide defense counsel child pornography evidence did not present question of substantial public interest because newly enacted statute resolved issue for future cases, and trial court's order addressed state's security concerns). Accordingly, we do not reach the second issue of whether the trial court properly rejected the petitioner's claim of privilege in his criminal defense file.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* August 5, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We granted the petitioner's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly dismiss the petitioner's appeal for lack of a final judgment?" And (2) "If the answer to the first question is 'no,' did the trial court properly reject the petitioner's claim of privilege in his attorneys' case file?" *Halladay* v. *Commissioner of Correction*, 333 Conn. 921, 921–22, 217 A.3d 634 (2019).

[2] Prior to filing the motion for the production of the relevant materials, the respondent filed a motion requesting *all* the materials in the criminal defense file. The court, *Newson, J.*, denied the motion, stating that it exceeded the limited discovery provided for in habeas proceedings and that there were other means by which to develop defenses to the petition. We note that the habeas court, *Hon. Jon C. Blue*, judge trial referee, which issued the ruling that is the subject of the present appeal, was not bound by that earlier decision. See, e.g., *Hudson Valley Bank* v. *Kissel*, 303 Conn. 614, 624, 35 A.3d 260 (2012) ("[a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision" (internal quotation marks omitted)).

[3] Following the habeas court's order of production, the petitioner's habeas counsel contacted the Office of the Chief Public Defender (OCPD) to inform it of the court's order requiring production of the defense file. Counsel from the OCPD informed the petitioner's habeas counsel of its objection to the disclosure of any work product contained in the file and took the position that the petitioner could not consent to the disclosure of any such material because it belonged to the petitioner's criminal defense counsel and the OCPD, not the petitioner.

[4] Relying on these principles, the petitioner also argues that he should not have to be subject to a contempt finding before being entitled to appellate review of the discovery order. See, e.g., *Barbato* v. *J. & M. Corp.*, 194 Conn. 245, 250, 478 A.2d 1020 (1984) ("If the party chooses to keep the information confidential, even after being ordered by the trial court to divulge it, he or she may be held in contempt. A judgment of contempt is a final, reviewable

judgment."). We disagree. In *Abreu* and *Woodbury Knoll, LLC*, the challenged orders directly conflicted with a statute or ethical duty, respectively, that precluded the attorney from complying. In this case, no such obligation binds the petitioner.

We acknowledge the petitioner's claim that complying with the habeas court's order would have exposed him to possible legal action by the Office of the Chief Public Defender (OCPD). In addition to this being merely hypothetical, neither the petitioner nor the OCPD, which filed an amicus curiae brief in support of the petitioner's position, cites any legal theory under which the OCPD could take legal action against the petitioner for turning over the case file as ordered. Thus, we have no occasion to consider any counterbalancing factor that might militate against requiring the parties to be held in contempt, as in *Abreu* and *Woodbury Knoll, LLC*.

[5] In so concluding, we emphasized that a "*different rule for nonparties* would not undermine the rules governing the discovery process between parties in any manner." (Emphasis added.) *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 771.

[6] *Redding Life Care, LLC*, concerned a tax appeal between the plaintiff property owner and the defendant town. See *Redding Life Care, LLC* v. *Redding*, supra, 331 Conn. 714–15. The town filed a motion to depose the plaintiff in error, who had completed appraisals on the property in dispute in connection with the tax appeal. See id., 715. The appeal arose from the trial court's denial of the plaintiff in error's motion seeking a protective order to avoid the deposition. Id.

[7] Because the petitioner is a party to the habeas proceedings, we need not consider whether the discovery order in the present case is a clear and unequivocal order that is sufficiently definite, specific, and comprehensive; all elements of the standard are required to satisfy the first prong of *Curcio*. See *Redding Life Care, LLC* v. *Redding*, supra, 331 Conn. 738.

[8] In arguing that *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 252, is not dispositive, the petitioner contends that (1) his interests should be given more weight than concerns about judicial economy because of the relationship between the attorney-client privilege and his constitutional right to counsel, and (2) judicial efficiency concerns are not as poignant in the habeas context because "discovery disputes involving attorney-client privilege are almost nonexistent in habeas corpus cases." The respondent conceded the second point at oral argument before this court, and, indeed, this court has, subsequent to its decision in *Melia*, rejected the proposition that allowing interlocutory appeals of discovery orders would open the floodgates. See *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, supra, 305 Conn. 767–68 ("Simply put, any concern over a flood of discovery order appeals is both misinformed and speculative. Indeed, we need look no further than the fact that, in the three years since *Abreu* was decided, no flood of appeals from discovery orders has occurred."). Although these pragmatic considerations are well taken, disclosure orders such as the one at issue in the present case do not fit within the narrow exception provided by the second prong of *Curcio*, given our repeated rejections of "the horse has left the barn" arguments to establish a right that requires immediate vindication by interlocutory appeal, lest it be lost. See, e.g., *State* v. *Fielding*, supra, 296 Conn. 39.

[9] The petitioner also argues in his reply brief that we should invoke our supervisory authority over the administration of justice to consider the merits of his claims. We decline the defendant's invitation given the extraordinary nature of that remedy, which nevertheless depends on the existence of subject matter jurisdiction in the first instance. See *State* v. *Reid*, 277 Conn. 764, 777–78, 894 A.2d 963 (2006).

[10] The Chief Justice may waive the "failure to follow the normal certification procedure" including a delay in filing, and consider the merits of an untimely petition for certification of a public interest appeal under § 52-265a. *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 300, 695 A.2d 1051 (1997); see id., 300–301; *State* v. *Ayala*, 222 Conn. 331, 342, 610 A.2d 1162 (1992).